Jones v. Board of Mississippi Levee Com'rs.

[66 South. 413.]

1. Eminent Domain.  *Destruction of outer levee.  Damages.  Abandonment of levee.*
   Where a levee board was maintaining a duplex system of levees, composed of the original line, which ran along the banks of the river, and the back or loop line which was connected with the front line on the north and south of plaintiff's land and his land was thus entirely enclosed by a wall of dirt erected by the levee board and was protected from the flood waters of the river. In such case where the levee board believing that the public welfare demanded it, blew up the front line of the levee and projected the river water upon plaintiff's land, the levee board was liable to plaintiff for damages, on the ground that his property was taken or damaged for public use.

2. Eminent Domain.  *Abandonment of levee.  Damages.*
   A landowner protected by a levee, cannot recover for the flooding of his land caused by the mere abandonment of the levee by the levee commissioners.

Appeal from the chancery court of Bolivar county. Hon. M. E. Denton, Chancellor.

Proceedings by W. S. Jones, against the Board of Mississippi Levee Commissioners to recover damages for land taken for public use. From a decree sustaining a demurrer to the petition, petitioner appeals.

The facts are fully stated in the opinion of the court.

*Sillers, Owen & Sillers,* for appellant.

We contend that the cutting of the outer or old levee being necessary for the protection of the inner levee, that the cutting of the outer levee and turning in the waters of the Mississippi river on the lands of appellant and the homes of the people within this loop, was a taking and damaging of private property for public use within

the constitutional sense. The case of *Mary E. Hughes* v. *The United States,* decided in the court of claims is a case in point, but not as strong as the case before this court.

In the case of *Pumpelly* v. *Green Bay Company,* 13 Wall. 166, the facts were as follows: "The lands involved were totally submerged by overflow waters. They were adjacent to the impediment placed by the defendants across the stream, and were so situated that the result of the improvement was to retard the natural flow of the water and accumulate such a volume of same at the *situs* of the works as to back up the overflow water upon the plaintiff's lands. It in effect amounted to a physical invasion and practical ouster of the plaintiff's possession." To same effect are: *United States* v. *Great Falls Mfg. Co.,* 112 U. S. 645; *United States* v. *Lynah,* 188 U. S. 445; *United States* v. *Williams,* 188 U. S. 485.

By examining the authorities along this line it will be seen that any action which deprives an owner of his land whether it is dug up for levee purposes or covered up with levees, or covered over with water for public purposes—or by public improvements—is a taking for public use, if taking it is not certainly a "damaging for public use" within the constitutional sense.

The case of *Commissioners* v. *Harkleroads,* 62 Miss. 807, is the leading case on this point, and is followed by *Richardson* v. *Levee Commissioners,* 68 Miss. 539, and *Duncan* v. *Levee Board,* 74 Miss. 125. In the latter case our senior was counsel for the levee board and we think we are familiar with the rule laid down in these cases. There is nothing in these cases or other cases decided by our courts to justify the opinion that the levee board can turn river water in on landholders with impunity, and escape liability. Judge Cooper says in the Harkleroads case: "The overflowing water of the Mississippi river is the enemy of the public, and the state, in assuming to deal with the danger arising therefrom, has not pro-

vided for compensating owners of lands lying along the borders of the river for any injury which may incidently and possibly arise from confining the waters within the limits fixed by the line of levees."

The court says the river is the public enemy to be kept out, not to be turned in. It further says there has been no provision for "compensating the owners of the lands lying along the borders of the river" outside of the levee by raising the flood line on these outside lands. *Nugent* v. *Levee Commissioners,* 58 Miss. 197.

The only case that could suggest the idea that the landowner is not entitled to damages from overflow by river water, is the ruling of the court in the case of *Richardson* v. *Commissioners,* 68 Miss. 539, on drainage, in which the court says: "The expense of drainage on either side of the levee, made necessary to protect it from overflow or siepage of rain water, should be allowed, but not the expense of draining the overflow and siepage water coming from the river." This does not touch the instant case. In the Richardson case the court is dealing with waters that siep through the levee because of the porous condition of the earth or land on which the levee is located, without fault of the board, and with land left outside of the levee as the Harkleroads case, exposed to annual overflow of the river. It is not incumbent on the board to drain this sort of water off lands so situated and so exposed. See *Richardson* v. *Commissioners,* 68 Miss. 539.

The same rule laid down in the Richardson case is followed in *Duncan* v. *Commissioners,* 74 Miss. 125, and all subsequent decisions. There is no case like the case at bar that has ever come before our courts or any other courts that we can find.

*Walton Shield,* for appellee.

If it becomes necessary to build a new levee or to repair an old one, and any owner's land or personal prop-

erty is taken or damaged thereby or if the drainage of his land is affected injuriously by the construction or repair of the levee, or if access to any part of his land is cut off or rendered more inconvenient thereby, then the commissioners to assess levee damages can consider this in making their awards, which had been done previously as to this petitioner, but all damages which come not as a result of the construction, repair and maintenance of levees but from the act tortious or not of any of the officials of the levee board, such as the cutting of a line of levee for any purpose whatever, the levee board is not liable because the taxes collected by it cannot be diverted for any such purpose. Suppose in a high water period the levee board, to protect the upper half of the district, should actually order by resolution, spread upon its minutes, the cutting of a line of levee in the lower half of the district, expecting thereby to save the upper line of levee. Clearly the persons injured by the turning of the overflow water of the Mississippi river in this manner upon their land, could not recover from the levee board; that is, the board could not divert the taxes to the payment of damages resulting to them in any such way. The question of the individual liablity of the members of the board, or the officials responsible for such an act, is quite a different question from the question of the liability of the levee board for the same. This matter, we submit, is one which has become confused in the minds of the distinguished counsel representing appellant.

COOK, J., delivered the opinion of the court.

The record in this case is as follows, viz.:

"State of Mississippi, Bolivar County, First Judicial District.

"In Circuit Court.

"To the Clerk of the Circuit Court of Said County: The petition of W. S. Jones respectfully represents: That he is the owner of a tract of land embracing eighty

acres in section 22, township 23, range 8 west, in said county; that said land is embraced between the old levee and the new Riverton Loop levee; that prior to April 11, 1912, the said land was fully protected from the overflow water of the Mississippi river, and was valuable farm land; that, on the said 11th day of April, 1912, the Board of Mississippi Levee Commissioners, as a precautionary measure to relieve the new line of levee from possible break in the old line of levee, cut the outer levee and turned in the water of the Mississippi river on said land, flooding and ponding the same to such an extent that petitioner's lands were flooded and crops and pasture land destroyed, and his cabins, outhouses, cribs, stables, fences, and other improvements were washed away, and the said land rendered practically valueless by being stripped of the improvements and left exposed to annual overflow from the opening made by the said Board of Mississippi Levee Commissioners in said outer line of levee.

"Your petitioner charges that the action of the said Board of Mississippi Levee Commissioners in cutting said outer levee and flooding petitioner's said land was, under the laws and Constitution of this state, a taking of and damaging said lands for levee purposes.

"Your petitioner claims compensation for any and all damages he has sustained by reason of the flooding of his lands and destruction of his property as alleged above.

"In consideration of the premises your petitioner prays that you forthwith issue a warrant, as required by law, to the sheriff of said county requiring him to summon W. C. Boyd, W. J. Alexander, and George W. Wilkerson, the commissioners to assess levee damages in said county, to go upon the ground on a day named in said warrant and view the premises and ascertain and determine the damages as provided by law in such cases, and to make an award in writing touching same, and to give the necessary notice required by law to the said

commissioners, and that you issue a summons to the
Board of Mississippi Levee Commissioners, directed to
the sheriff of Washington county, summoning the said
Board of Mississippi Levee Commissioners to appear
and defend this petition as required by law.''

''AWARD OF COMMISSIONERS.

''Whereas, the Board of Mississippi Levee Commis-
sioners have deemed it necessary, with regards to the
following lands in the county of Bolivar and state of
Mississippi, to cut the outer line of levee which protected
the lands lying between the New Riverton Loop levee
and the old or outer levee from overflow water from the
Mississippi river into and upon the lands between said
levees: Eighty acres of said lands between said levees
being the property of W. S. Jones; and whereas, said
owner claims compensation for any damage that may be
sustained by said owners in consequence of said cutting
of said levee; and whereas, we, the undersigned commis-
sioners appointed by virtue of an act to amend section
3 of an act to amend 'An act to incorporate the board
of levee commissioners of Bolivar, Washington and Issa-
quena counties, and for other purposes, approved No-
vember 27, 1865, and to revise acts amendatory thereof,
approved March 13, 1884,' approved February 26, 1904
(Laws 1904, ch. 92), to assess damages in the county of
Bolivar, having been summoned to assess and make an
award, as provided by the act of the legislature as afore-
said, of the damages sustained by said owners by reason
of the use of said lands, as above stated, having gone on
the ground and viewed the same, we do now ascertain
and determine the damage caused to the adjacent prop-
erty of said owner, as follows, to wit: Damages to eighty
acres at twenty dollars per acre for eighty acres of land
between old and new levee; fifty dollars damages to two
single houses; ten cents per panel for fence: We there-
fore assess and award as damages, as shown above, the
sum above given.

"In testimony whereof we have hereunto set our hands this the 5th day of August, 1912."

### Appeal from award by petitioner.

"State of Mississippi, Bolivar County, First Judicial District.

"In Chancery to November Term, 1912.

"The petition of W. S. Jones praying an appeal from the award of the commissioners to assess levee damages, rendered on the 6th day of August, 1912.

"To the Honorable Chancery Court of Bolivar County, Mississippi: Your petitioner, W. S. Jones, shows the court: That he is the owner of the following tract of land in Bolivar county, Mississippi: Eighty acres of land in section 22, township 23, range 8, west. That on the 6th day of August, 1912, in pursuance of the petition of the said W. S. Jones, the commissioners to assess levee damages assembled on said land and made the following award:

80 acres of land damaged at $20 per acre$1,600 00
To damage 2 single cabins ............      50 00
To damage ——— panels fence at 10 cents
    per panel .........................:.

"Your petitioner says that the award is inadequate and does not compensate your petitioner for the damage he has sustained by reason of the cutting of the said old levee. Your petitioner says that he has sustained the following damage, by reason of the cutting of said old or outer levee and turning in the water from the Mississippi river on the lands of petitioner and leaving them exposed to the annual overflow, whereby his lands and property were destroyed, to wit:

80 acres of land were flooded to depth of
    12 to 15 feet, and their agricultural val-
    ue entirely destroyed—at $60 per acre. .$4,800 00

| | | |
|---|---:|---:|
| 2 single cabins on said land were swept away and destroyed—of the value of $200 each ......................... | 400 | 00 |
| 3 corn cribs were swept away and destroyed—of the value of $25 each...... | 75 | 00 |
| 3 cotton houses were swept away and destroyed—of the value of $25 each....... | 75 | 00 |
| 2 chicken houses were swept away and destroyed—of the value of $10 each.... | 20 | 00 |
| 2 stables were swept away and destroyed —of the value of $25 each............ | 50 | 00 |
| 1 barn was swept away and destroyed— of the value of ..................... | 75 | 00 |
| 2 outhouses were swept away and destroyed—of the value of $12.50 each.. | 25 | 00 |
| 2 wells were destroyed—of the value of $10 each ........................... | 20 | 00 |
| 300 panels of fence were destroyed—of value 25c per panel ................. | 75 | 00 |
| 10 fruit trees—destroyed at $10 each.. | 100 | 00 |

"Your petitioner claims compensation for any and all damages which he has sustained by reason of the flooding of his lands and destruction of his property alleged in his petition for the assembling of the commissioners to assess levee damages, and as demanded herein.

"By reason of the premises your petitioner says that he has not received justice at the hands of the said commissioners to assess levee damages; that the damages awarded were inadequate compensation for the losses sustained by him, the said commissioners failed and refused to award your petitioner full compensation for any of the items above enumerated, and he (your petitioner) appeals from the action and award of the said commissioners to assess levee damages to the chancery court of said county, that full and complete justice may be done him."

''Appeal from award by levee board.

''State of Mississippi, County of Bolivar, First Judicial District.

''In the Chancery Court to the November Term, 1912.

''W. S. Jones v. The Board of Mississippi Levee Commissioners. No. 2502.

''Appeal from Award by the Board of Mississippi Levee Commissioners.

''To the Chancery Court of Said County: Your petitioner, the Board of Mississippi Levee Commissioners, respectfully states that on the 5th day of August, 1912, the commissioners to assess levee damages in Bolivar county, Mississippi, rendered an award in favor of W. S. Jones against your petitioner, a copy of which is hereto attached and marked Exhibit A. Your petitioner feels aggrieved at said award and appeals therefrom and hereby states the following grounds for said appeal: Your petitioner is not liable because said outer line of levee was cut as alleged in said petition, and the alleged damage resulting from the turning of the overflow water from the Mississippi river in and upon the lands of the said W. S. Jones is not a damage for which your petitioner is liable in law. Your petitioner further states that said lands were not damaged as the result of said cutting of said outer line of levee, nor were the premises thereon damaged as stated in said award. Petitioner states that there was no damage whatever to said lands and to said houses, nor is your petitioner liable for said alleged damages.

''The premises considered, your petitioner prays that summons issue to the said W. S. Jones commanding him to appear at the next term of the chancery court of the First judicial district of Bolivar county, Mississippi, to answer this appeal.''

"Demurrer of defendant.

"State of Mississippi, County of Bolivar, First Judicial
District.

"In Chancery Court, to November Term, 1912.

"W. S. Jones *v.* Board of Mississippi Levee Commis-
sioners.   No. 2502.

"Demurrer.

"To the Chancery Court of Said County:  Now comes
the Board of Mississippi Levee Commissioners and de-
murs to the original petition filed herein and assigns the
following grounds of demurrer:

"First.  Said petition shows that the damages claimed
in said petition is due to the cutting of the outer levee
and the turning in the water of the Mississippi river
upon the land between the outer levee and the new levee,
thereby flooding said land with water from the Missis-
sippi river and leaving the same exposed to annual over-
flows from said Mississippi river, and your demurrant
states that it is not liable for any damage done to peti-
tioner because of the overflowing of said land by said
Mississippi river as a result of the cutting of said outer
levee.

"Second.  The petition herein was filed before the
commissioners to assess levee damages for Bolivar
county, and under Act of 1904 said commissioners had no
jurisdiction to assess any other damages than those re-
sulting from the construction, repair, and maintenance
of levees, and the damages alleged in said petition are
not due and are not the result of the construction.  On
the other hand, it may be said that the future vagaries
and whims of the Mississippi river are veiled in mystery,
and even the wisest engineer may guess wrong when he
attempts to forecast what the river will do to-morrow.
We are not concerned with what may or may not have
happened had the river been left to work its will.  The

river was taken in hand by the levee board and was used as an instrument to save what it was seeking to destroy, and the pleadings are that this interference with and use of the water was the direct ·cause of appellant's damage.

Appellant could not have complained, had the levee board abandoned the front levee. If the river had undermined or overtopped and destroyed the levee, the levee board would not have been liable for the injury thus caused to appellant's land. It is the settled law of this state that a landowner cannot recover damages caused by leaving his lands outside and exposed to the overflow. *Levee Commissioners* v. *Harkleroads,* 62 Miss. 807; *Richardson* v. *Levee Commissioners,* 68 Miss. 540, 9 So. 351; *Duncan* v. *Levee Commissioners,* 74 Miss. 125, 20 So. 838. In the last-named case it is said:

"But damages produced by independent causes, other than being left outside the levee, if in their nature allowable within the rules of law, are still recoverable."

In none of the numerous cases decided by this court can be found any expression upon the precise point raised by this record, and we have found no case that can be relied on to directly support either side of this controversy. The facts of this case are without precedent in the books, so far as we have been able to discover.

The levee board is authorized to erect, alter, abandon, relocate, and maintain levees whenever and wherever, in its judgment, it becomes necessary to do so for the protection of the district from the overflow waters of the river. If, in doing any of the things the board is authorized to do, it becomes necessary to entirely destroy or to damage the property of individuals, the law contemplates that the individuals so sacrificed or damaged shall be compensated for their loss. The property owners of the district are required to pay taxes to carry on the enterprise for the common good, and whenever an individual contributes, either voluntarily or involun-

tarily, more than the taxes assessed against his property, it is clearly the purpose of the law to make him whole, to reimburse him for his extraordinary contribution to common weal.

In the instant case we will assume that the lands damaged were assessed for levee taxes, because they were protected by the levee. The levee board in the exigency exercised its best judgment, took down the embankment which protected these lands, and thus used the waters for the protection of the district, and in doing the work they used the river and damaged the lands of appellant for the benefit of the public. There was no abandonment of the levee which protected appellant's land, but a destruction of the levee.

In this instance the common enemy, the *vis major* was directed and controlled and forced to do the work of conservation. There was no effort to "close the gates." The gates were thrown down, and the enemy was invited to enter and take, and did take, its toll from the appellant, and at the same time it provided a cushion to receive the impact of the river's full strength against the second and principal line of defense.

We have concluded that, under the peculiar facts made by the record, appellant's lands were taken and damaged for public use, and the demurrer should have been overruled.

*Reversed and remanded.*